IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE BURLINGTON INS. CO., | ) |
| Plaintiff, | ) |
| vs. | ) |
| PHILLIPS-GARRETT, INC., d/b/a Garrett's Pink Slip Exotic Bar; and MONIQUE TAYLOR, special administrator of the Estate of Walter Taylor, Jr., | ) No. 13–cv–0488–MJR–DGW |
| Defendants. | ) |

# MEMORANDUM & ORDER

**REAGAN, District Judge:**

This declaratory judgment action comes before the Court on Plaintiff's motion for judgment on the pleadings. For the reasons explained below, Plaintiff's motion (Doc. 21) is **GRANTED**.

## BACKGROUND

In late November 2012, Walter Taylor, Jr., went to Lovejoy, Illinois, to spend part of his evening at Garret's Pink Slip Exotic Bar (Defendant "Garrett's"). According to a complaint in the Circuit Court of St. Clair County (Case No. 13–L162, filed March 28, 2013—"the underlying action"), Maurice Shelton (one of Garrett's employees and/or agents), while in the course and scope of his employment or agency, fired a bullet that struck Walter Taylor. (*See* Doc. 2-2). Taylor died as a result, and his mother (and special administrator of his estate), Monique Taylor,

1

sued Garrett's for negligently hiring, training, and supervising Shelton. The underlying complaint includes, *inter alia*, the following four allegations:

1. Walter Taylor, Jr. was struck by a bullet fired by Maurice Shelton and died as a result.

2. Defendant discharged a firearm in the direction of Walter Taylor, Jr.

3. Garrett's "knew or should have known that Maurice Shelton was unfit for the duties of his agency or employment and, in particular, that he behaved in a physically dangerous or incompetent manner that created a risk of harm to the patrons of Garrett's Pink Slip Exotic Bar."

4. Garrett's "failed to protect Walter Taylor, Jr. from the acts of … Maurice Shelton." (Doc. 2-2, 3).

Garrett's had been issued a general liability insurance policy (No. 086BW21980—"the Policy") by the instant Plaintiff, Burlington Insurance Company ("Plaintiff"). Under the Policy, Garrett's tendered defense of the underlying suit to Burlington, who filed the instant suit in May 2013. Burlington now seeks a declaratory judgment that, because the November 2012 shooting falls into an "Assault and Battery Exclusion" in the Policy, it has neither a duty to defend nor to indemnify in the underlying case.

### THE POLICY

In pertinent part, the Policy contains the following language:

### SECTION I — COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of

2

      "bodily injury" or "property damage" to which this insurance applies. * * *

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury"…is caused by an "occurrence" that takes place in the "coverage territory." * * *

"Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." An "occurrence" is an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." But not all bodily injuries are covered. One exclusion (the "Assault and Battery Exclusion") reads:

   D. This insurance does not apply to:

   **a. Assault, Battery, or Other Physical Altercations**

   "Bodily injury" or "property damage":

   (1) Expected or intended from the standpoint of any insured.

   (2) Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person;

   (3) Arising in whole or in part out of any attempt by any person to avoid, suppress, or halt any actual or threatened "assault" or "battery."

   (4) Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or attempted by any person or any attempt by any person to avoid, prevent, suppress or halt any actual or threatened verbal or physical confrontation. * * *

> G. The exclusions in [Paragraph D] apply to all acts or omissions, including any act or omission in responding to or failing to respond or render aid, medical [or] otherwise, to any victim of the "assault" or "battery" and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort and shall not be subject to any severability or separation of insured's provision in the policy.

The Policy defines "assault" as "any willful attempt or threat to inflict injury upon the person of another, when coupled with an apparent present ability to do so, and any intentional display of force such as would give a victim reason to fear or expect immediate harm." A "battery" is defined as "wrongful physical contact with a person without his or her consent that entails some injury or offensive touching." (*See* Doc. 2-1, 47–48).

Plaintiff moves for judgment on the pleadings, arguing that the Policy and the underlying complaint establish it has no duty to defend or indemnify. The motion is ripe: both Defendants filed response briefs.[1] After a thorough review of the record and controlling precedent, the Court **GRANTS** the motion for the reasons explained below.

## JUDGMENT ON THE PLEADINGS STANDARD

Federal Rule of Civil Procedure 12(c) typically controls a motion for judgment on the pleadings, and Rule 10 makes clear that attached, written documents are functionally part of those pleadings: "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." **Fed. R. Civ. P. 10(c).** But before laying out the Rule 12(c) standard, the Court must address a threshold

---

[1] Defendant Garrett's joined Defendant Taylor's response brief. (*See* Doc. 31).

issue. Defendant Taylor asserts that, at this juncture, Rule 12(c) is the improper procedural vehicle for assessing the merits of the Amended Complaint. According to Taylor, more discovery is needed (and the case should survive until at least the summary judgment stage) because "the authenticity of the purported Insurance Policy is disputed."

The Court appreciates novel legal arguments, but this one is meritless: the pleadings reflect no conflicting factual issues that would preclude taking up the legal issues now before the Court. Plaintiff's amended complaint alleges:

> TBIC issued commercial liability general insurance policy number 086BW21980 to Garrett. This policy insured a liquor business establishment located at 114 South 4th Street, Lovejoy, Illinois. This policy was in effect on November 25, 2012, and at all other times relevant. A photocopy of a certified copy of the policy is attached and is incorporated herein…

Defendant Taylor answered that she had "insufficient information to either admit or deny" that paragraph. Defendant Garrett's, in contrast, admitted to the policy's existence (and relevance to this case).

The Rule 12(c) standard (where, as here, the rule is invoked in an attempt to dispose of the case on the substantive merits) is analogous to the summary judgment standard, except that the court may consider only the contents of the pleadings. *Alexander v. City of Chi.*, 994 F.2d 333, 336 (7th Cir. 1993). Generally, a written instrument attached to (or even referred to) in a complaint is part of the pleadings for all purposes. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Material issues of fact (including when there is a bona fide challenge to the authenticity of a document) preclude judgment on the pleadings. *Travel Over the*

5

*World v. Kingdom of Saudi Arabia*, 73 F.3d 1423 (7th Cir. 1996). *See also Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). But a material issue of fact "may be framed by an *express conflict* on a particular point between the parties' respective pleadings." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1368 (3d ed.). Uncontested allegations to which the parties had an opportunity to respond are taken as true. *U.S. v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991).

In limiting (as it must) the scope of review to the pleadings, the Court finds no express conflict between them. Defendant Taylor has not contested Plaintiff's allegation that a photocopy of the (certified) Policy was attached to the pleadings. Rather, she ceded a lack of knowledge whether (or not) the document in question was actually the Policy (or an equally admissible photocopy, *see* Fed. R. Evid. 1003). In light of Garrett's admission that a copy of the Policy was attached to the pleadings, Taylor cannot create a material fact out of her lack of knowledge. Taylor relies on the unsupported principle (in her opposition brief—not her Answer) that "the authenticity of the purported Insurance Policy is disputed." But motions and memoranda are not pleadings. *See Flonder v. Sheriff of Kankakee Cnty.*, No. 12–2115, 2012 WL 4321714, at *3 (C.D. Ill. Aug. 31, 2012) ("Statements made in memoranda submitted to the court do not constitute pleadings. * * * Therefore, the Court will not consider [a party's statement in a response brief] as part of the pleadings in resolving this Rule 12(c) motion"). And two parties who acknowledge a

document's authenticity and one who (given the opportunity to chime in, *see Wood*, **925 F.2d at 1581**) says "I don't know" is simply not a conflict.[2]

Further, the Policy (whether authentic or not) is, by the plain language of the Federal Rules, part of the pleadings. This case will establish—based on the Policy provided by Plaintiff—the contours of any duties (or lack thereof) owed by Plaintiff to Defendants. If at some later date it is shown the attached Policy is inauthentic, a declaratory judgment would be of no value to Plaintiff and of no harm to Defendant. Put differently, Plaintiff has asked the Court to rule on the Policy it attached, and the assertion that the Policy is somehow a fake (again: *not* an assertion made in the pleadings) would be part of another case or controversy. *See Friedman v. Washburn Co.*, 145 F.2d 715, 717 (7th Cir. 1944) (judgment on the pleadings "allowable not for lack of *proof*, but for lack of an *issue*") (emphasis added).

Finally, Taylor relies on an Arizona district court case for the proposition that one defendant cannot be bound by another defendant's admission (i.e., Garrett's admission of the existence and relevance of the attached policy). That rule is a sound one, but inapplicable here, where there is no actual conflict among Taylor's answer, Garrett's answer, and the Amended Complaint. *See* 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1368 (3d ed.) (quoting *Reed v. Turner*, 2 F.R.D.

---

[2] Taylor's opportunity to *deny* the authenticity of the Policy is especially important given a party's "flexibility in opposing a [Rule 12] motion." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The Court of Appeals counseled: a litigant "who is opposing … a Rule 12(c) motion and who can provide [materials outside the pleadings to illustrate facts he expects to prove] may find it prudent to do so." *Id.* Had Taylor *denied* the Policy's authenticity in her Answer or, in briefing the instant motion filed illustrative materials putting its authenticity in doubt, the threshold procedural question here may have had a different outcome. *Accord Roe v. Bridgestone Corp.*, 492 F.Supp.2d 988, 1007 (S.D. Ind. 2007) ("Such documents … provide a way for [the non-movant] to show a court that there is likely to be some evidentiary weight behind the pleadings the court must evaluate.").

12, 12 (E.D. Pa. 1941) (in granting a motion for judgment on the pleadings, "the attempt to put the plaintiff to proof as to certain facts material to his claim are obviously not in good faith. * * * This Court has emphatically disapproved the practice of attorneys making use of the pro forma denials authorized by the [then] new Rules … where the matter is one of common knowledge or one as to which the party can inform himself with the slightest effort. The effect and purpose is merely to delay justice.").

So Rule 12(c) applies. The rule is designed to permit a party to request a district court to dispose of the matter at the initial stage of the proceedings. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 n.3 (7th Cir. 1998). A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a 12(b)(6) motion to dismiss for failure to state a claim. *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). Judgment is based on the pleadings, and (as discussed above) the pleadings include the complaint, the answer, and any written instruments attached as exhibits. *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452. Facts are viewed in the light most favorable to the nonmoving party, and the motion will be granted "only if it appears beyond doubt that the [nonmovant] cannot prove any facts that would support his claim for relief." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). *Accord Hous. Auth. Risk Retention Grp. V. Chi. Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004). The moving party must demonstrate that there are no material issues of fact to be resolved. *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007).

ANALYSIS

To determine whether an insurer's duty to defend[3] an underlying lawsuit has been triggered, a court must compare the allegations in the underlying complaint with the language of the insurance policy. *Lagestee-Mulder, Inc. v. Consolidated Ins. Co.*, 682 F.3d 1054, 1056 (7th Cir. 2012) (citing *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). If a complaint against an insured contains allegations "that are even potentially within policy coverage, the insurer is obligated to defend the insured." *American Fam. Mut. Ins. Co. v. W.H. McNaughton*, 843 N.E.2d 492, 510 (Ill. App. Ct. 2006). Any doubts as to whether particular claims fall within the policy are resolved in favor of coverage. *Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co.*, 500 F.3d 640, 643 (7th Cir. 2007). "Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 811 (7th Cir. 2010) (quoting *State Farm Fire & Cas. Co. v. Perez*, 899 N.E.2d 1231, 1235 (Ill. App. Ct. 2008)).

But the duty to defend is not unlimited. *Amerisure*, 622 F.3d at 810. The general rules favoring the insured must yield to the paramount rule of reasonable construction which guides contract interpretations. *Id.* at 811. The primary objective in contract construction is to give effect to the intent of the parties. *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007). There is no duty to defend when

---

[3] The duty to defend is broader than the duty to indemnify, *see Am. Family Mut. Ins. Co. v. W.H. McNaughton Builders, Inc.*, 843 N.E.2d 492, 497 (2006), and because the undersigned holds Plaintiff had no duty to defend, it follows that neither does it have a duty to indemnify. *Accord Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010).

it is clear from the face of the underlying complaint that the allegations set forth fail to state facts to bring a case within (or potentially within) policy coverage. *Lagestee-Mulder*, 682 F.3d at 1056. "[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy. The question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action." *Ill. Emcasco Ins. Co. v. Nw. Nat. Cas. Co.*, 785 N.E.2d 905, 909 (Ill. App. Ct. 2003) (quoting *Int'l Ins. Co. v. Rollprint Packaging Prods., Inc.*, 728 N.E. 2d 680, 688 (Ill. App. Ct. 2000)).

Defendants take calculated, deliberate aim at Plaintiff's assertion that "[t]here is no question that the shooting that resulted in Walter's death here constitutes an assault *and* a battery." The underlying suit, Defendants argue, alleges neither an assault nor a battery, only that Walter Taylor was "struck by a bullet fired by Maurice Shelton," and that Garrett's / Shelton "discharged a firearm in the direction of Walter Taylor, Jr." Because an assault must be a "willful" act, and because a battery must be "wrongful," Defendants argue there is room in the underlying complaint for a theory of liability (presumably—Defendants do not offer specifics—some accidental discharge in the direction of Taylor) that fits neither the assault nor the battery definition.

It is true the underlying complaint does not speak to Maurice Shelton's state of mind (i.e. whether he *willfully* attempted or threatened to inflict injury) when he fired the bullet that killed Walter Taylor. Without such allegations, the Policy's definition of assault (and its "willful" requirement) cannot be met. That leaves the

10


Policy's definition of battery, so the ultimate question becomes: can the underlying complaint's allegations be said to stem from anything other than "wrongful" physical contact.[4] *See American Fam. Mut. Ins. Co.*, 843 N.E.2d at 510 (even allegations "potentially" within coverage trigger a duty to defend).

The Policy's definition of battery is far broader than either the civil or criminal definitions. Both of those (as Defendants imply) require intent. *See Bakes v. St. Alexius Med. Ctr.*, 955 N.E.2d 78, 85 (Ill. App. Ct. 2011) (civil); 720 ILCS 5/12–3(a) (criminal). The Policy, though, merely requires "wrongful" contact for the exclusion to apply. "Wrongful" is not defined by the policy, so the term's plain meaning controls. *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004). *See also Gallagher v. Lenart*, 874 N.E.2d 43, 50 (Ill. 2007) ("the language of a contract … given its plain and ordinary meaning, is the best indication of the parties' intent.").

Here, the dictionary definition of "wrongful" certainly encompasses the Maurice Shelton's actions as described in the underlying complaint. Wrongful can be defined as "injurious, heedless, unjust, reckless, unfair; it implies the infringement of some right, and may result from disobedience to lawful authority." BLACK'S LAW DICTIONARY (6th Ed. 1990). *See also* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1447 (11th ed. 2003) (defining "wrongful" as "wrong, unjust; having no legal sanction: unlawful"). Even the most specific understanding of "wrongful"— unlawfulness—does not create ambiguity here. The underlying complaint is clear:

---

[4] There is no dispute as to the other parts of the battery definition, i.e. whether the bullet striking decedent constitutes "contact," decedent's lack of consent to the shooting, or whether he was injured.

On November 25, 2012, Maurice Shelton (who often behaved in a physically dangerous or incompetent manner) was in control of a gun pointed in Walter Taylor's direction. Shelton fired it. The bullet struck and killed Taylor. No matter how much passive voice the underlying complaint contains, it is impossible to envision a scenario where, if its allegations are true, Shelton was not breaking a law, much less acting heedlessly or recklessly. *See, e.g.,* 720 ILCS 5/12–5(a) (reckless conduct); 720 5/24–1.5 (reckless discharge of a firearm). The underlying complaint is drafted so as to include minimal facts, and the dearth could be construed to support a theory of some highly improbable accident. But even that theoretical accident would be "wrongful" by the plain meaning of the word, thus triggering the Policy exclusion. *See Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1179 (7th Cir. 2013) ("to allow the parties to render such exclusions essentially meaningless through artful pleadings would allow them to circumvent the terms and intent of the policy and its exclusions").

  The result is especially sound in light of Policy's "assault" definition, where a "willful" state of mind is mandatory. The parties could have likewise contracted intent into the battery provision. They did not, and to read an implied willfulness provision into the word "wrongful"—given the express, immediately preceding language—would create coverage here that goes against the unambiguous intent of the parties. *See Gallagher*, 874 at 58 ("words derive their meaning from the context in which they are used," thus each part of a contract must be viewed "in light of the

12

others."). Defendants cannot trigger coverage here via a suggestion that "battery"—despite the Policy's plain words—implies some level of intent.

The Court cannot, of course, rely on Plaintiff's assertion that "there is no question that the shooting…constitutes an assault *and* a battery," or its characterization of the November 25 as a "shooting" that "broke out." Those assertions are not part of the pleadings. The underlying complaint, however, makes clear that—whatever the specific intent of Maurice Shelton—he controlled a gun that was aimed in Walter Taylor's direction, and he fired. Those facts may not establish the elements of either civil or criminal battery in Illinois, but they fit the Policy's definition of "battery."

The plain language of the Policy broadly and unambiguously excludes coverage for bodily injury "arising in whole or in part out of any … 'battery,'" and for any arising "theory of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of [as in the underlying case] negligence." The underlying case fits into the Policy's exclusions, and the Court will grant Plaintiff's motions for judgment on the pleadings.

## CONCLUSION

Comparing the underlying complaint with the Policy, the Court holds that Plaintiff Burlington Insurance Company has neither a duty to indemnify nor a duty to defend re: Case No. 13–L162 in the Circuit Court of St. Clair County, Illinois. Plaintiff's Motion for Judgment on the Pleadings (**Doc. 21**) is **GRANTED**. The Clerk

is **DIRECTED** to enter judgment in favor of Plaintiff and against all Defendants, and to **CLOSE** this case.

**IT IS SO ORDERED.**

DATE: March 28, 2014              s/ *Michael J. Reagan*
                                  MICHAEL J. REAGAN
                                  United States District Judge